IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| ANTHONY SHREEVE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:10-cv-00071 |
| | ) | |
| BARACK OBAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# Table of Contents

Table of Authorities ..................................................................................... iii

Introduction ................................................................................................. 1

Statement of the Case ................................................................................. 2

I.      Statutory Background ...................................................................... 2

II.     Current Proceedings ........................................................................ 5

Argument ..................................................................................................... 6

I.      Standard of Review ......................................................................... 6

II.     This Case Should Be Dismissed Because The Court Lacks Subject Matter
        Jurisdiction ....................................................................................... 7

        A.      Plaintiffs Lack Standing Because They Have Alleged No Injury
                In Fact ................................................................................. 7

        B.      Plaintiffs' Claims Against Defendants Reid And Pelosi Are Barred
                By The Speech Or Debate Clause .......................................... 9

        C.      Plaintiffs' Claims Against Defendant Obama Are Barred by
                Presidential Immunity ......................................................... 11

        D.      Plaintiffs' Request for Money Damages Is Barred by
                Sovereign Immunity ............................................................ 12

        E.      This Court Lacks Personal Jurisdiction Over Defendants Reid
                And Pelosi ........................................................................... 14

III.    This Case Should Be Dismissed Because Plaintiffs Fail to State A Claim
        Upon Which Relief May Be Granted .............................................. 15

        A.      This Court Cannot Overrule Supreme Court Precedent ...................... 16

        B.      The ACA Is a Valid Exercise of Congress's Powers to Regulate
                Interstate Commerce ........................................................... 17

        C.      The ACA Is a Valid Exercise of Congress's Independent Power
                under the General Welfare Clause ....................................... 20

i

IV.    Plaintiffs Are Note Entitled To a Preliminary Injunction ................................................ 22

      A.    Plaintiffs Make No Showing That They Would Be Irreparably Harmed
            in the Absence of Emergency Relief ................................................................... 23

      B.    The Balance of the Equities and the Public Interest Weigh Strongly
            Against Granting Preliminary Relief ................................................................... 24

Conclusion ..................................................................................................................................... 25

# Table of Authorities

*Cases:*                                                                                              *Page:*

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ................................................................................ 6

*Agostini v. Felton,*
    521 U.S. 203 (1997) ................................................................................ 17

*Blakely v. United States,*
    276 F.3d 853 (6th Cir. 2002) ................................................................... 14

*Bob Jones Univ. v. Simon,*
    416 U.S. 725 (1974) ................................................................................ 22

*Burke v. Allard,*
    2007 WL 2697598 (D. Colo. Sept. 11, 2007) .............................................. 11

*Caribbean Marine Servs. Co. v. Baldrige,*
    844  F.2d 668 (9th Cir. 1988) ................................................................... 23

*In re Carter,*
    553 F.3d 979 (6th Cir. 2009) ..................................................................... 9

*Charles C. Steward Mach. Co. v. Davis,*
    301 U.S. 548 (1937) ................................................................................ 21

*Connection Distributing Co. v. Reno,*
    154 F.3d 281 (6th Cir. 1998) ................................................................... 23

*Coyne v. Am. Tobacco Co.,*
    183 F.3d 488 (6th Cir. 1999) ..................................................................... 9

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .................................................................................. 7

*Dep't of the Army v. Blue Fox, Inc.,*
    525 U.S. 255 (1999) ................................................................................ 12

*Duncan v. Dep't of Labor,*
    313 F.3d 445 (8th Cir. 2002) ................................................................... 13

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975) ........................................................................... 9, 10

*Cases:* *Page:*

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................................. 23

*Fednav, Ltd. v. Chester,*
    547 F.3d 607 (6th Cir. 2008) ..................................................................... 8

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ............................................................................. 11, 12

*Frothingham v. Mellon,*
    262 U.S. 447 (1923) ................................................................................... 9

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,*
    23 F.3d 1071 (6th Cir. 1994) ................................................................... 23

*Gonzales v. Raich,*
    545 U.S. 1 (2005) ............................................................................. *passim*

*Gravel v. United States,*
    408 U.S. 606 (1972) ................................................................................. 10

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ................................................................................. 24

*Hein v. Freedom From Religion Foundation, Inc.,*
    551 U.S. 587 (2007) .............................................................................. 9, 23

*Helvering v. Davis,*
    301 U.S. 619 (1937) ................................................................................. 21

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
    452 U.S. 264 (1981) ................................................................................. 22

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.,*
    425 U.S. 738 (1976) ................................................................................. 19

*Hutto v. Davis,*
    454 U.S. 370 (1982) ................................................................................. 16

*Intera Corp. v. Henderson,*
    428 F.3d 605 (6th Cir. 2005) ................................................................... 14

iv

*Cases:*                                                                                                                          *Page:*

*Kardules v. City of Columbus,*
    95 F.3d 1335 (6th Cir. 1996) ........................................................................................ 6

*Keener v. Cong. of the U.S.,*
    467 F.2d 952 (5th Cir. 1972) ..................................................................................... 11

*Kilbourn v. Thompson,*
    103 U.S. 168 (1880) .................................................................................................. 10

*Klimas v. Comcast Cable Commc'ns, Inc.,*
    465 F.3d 271 (6th Cir. 2006) ...................................................................................... 7

*License Tax Cases,*
    72 U.S. (5 Wall.) 462 (1867) .............................................................................. 20, 21

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................................... 7

*McNeil v. United States,*
    508 U.S. 106 (1993) .................................................................................................. 14

*Miller v. United States,*
    784 F.2d 728 (6th Cir. 1986) .................................................................................... 12

*Mississippi v. Johnson,*
    71 U.S. (4 Wall.) 475 (1866) .................................................................................... 11

*Nalette v. United States,*
    72 Fed. Cl. 198 (Fed. Cl. 2006) ............................................................................... 13

*In re Navy Chaplaincy,*
    534 F.3d 756 (D.C. Cir. 2008), *cert. denied*, 129 S. Ct. 1918 (2009) ........................... 23

*New York v. United States,*
    505 U.S. 144 (1992) .................................................................................................. 15

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) .................................................................................................. 11

*Reed v. Reno,*
    146 F.3d 392 (6th Cir. 1998) .................................................................................... 12

v

| Cases: | Page: |
|---|---|

*Rockefeller v. Bingaman*,
234 F. App'x 852, 855-56 .................................................................. 11

*Rosen v. Tenn. Com'r of Fin. and Admin.*,
288 F.3d 918 (6th Cir. 2002) ............................................................ 8

*Salazar v. Buono*,
130 S. Ct. 1803 (2010) ..................................................................... 15

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ........................................................................... 8

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ......................................................................... 12

*Sonzinsky v. United States*,
300 U.S. 506 (1937) ......................................................................... 22

*South Dakota v. Dole*,
483 U.S. 203 (1987) ......................................................................... 21

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................................... 1, 6

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ...................................................... 12

*Third Nat. Bank in Nashville v. WEDGE Group Inc.*,
882 F.2d 1087 (6th Cir. 1989) ...................................................... 14

*United States v. McGee*,
714 F.2d 607 (6th Cir. 1983) ........................................................ 15

*United States v. Miami Univ.*,
294 F.3d 797 (6th Cir. 2002) ........................................................ 24

*United States v. Mitchell*,
463 U.S. 206 (1983) ................................................................. 12, 13

*United States v. Oakland Cannabis Buyers' Coop.*,
532 U.S. 483 (2001) ........................................................................ 24

vi

**Cases:**                                                                                    **Page:**

*United States v. Sanchez,*
    340 U.S. 42 (1950) ........................................................................... 21

*United States v. South-Eastern Underwriters Ass'n,*
    322 U.S. 533 (1944) ......................................................................... 19

*United States v. Talley,*
    275 F.3d 560 (6th Cir. 2001) ......................................................... 17

*United States v. Testan,*
    424 U.S. 392 (1976) ......................................................................... 13

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ......................................................................... 24

*White v. United States,*
    601 F.3d 545 (6th Cir. 2010) ........................................................... 8

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ........................................................................... 7

*Wickard v. Filburn,*
    317 U.S. 111 (1942) ................................................................. *passim*

*Winter v. Natural Res. Def. Council,*
    129 S. Ct. 365 (2008) .............................................................. *passim*

**Constitution:**

U.S. Const. art. I, §6, cl. 1 ...................................................................... 9

U.S. Const. art. I, § 8, cl. 1 ............................................................... 20, 21

U.S. Const. art. I, § 8, cl. 3 ...................................................................... 17

**Statutes:**

5 U.S.C. § 701(b)(1)(A) ........................................................................ 11

5 U.S.C. § 702 ...................................................................................... 11

Case 1:10-cv-00071  Document 10  Filed 08/27/10  Page 8 of 36  PageID #: 661

*Statutes:*                                                                                    *Page:*

26 U.S.C. § 7421(a) .................................................................................................. 12

26 U.S.C. § 7422(a) .................................................................................................. 12

26 U.S.C. §§ 9801-03 ............................................................................................... 19

28 U.S.C. § 1331 ....................................................................................................... 12

28 U.S.C. § 1346 ................................................................................................. *passim*

28 U.S.C. § 1346 (a)(1) ............................................................................................ 12

28 U.S.C. § 1346(a)(2) ............................................................................................. 13

28 U.S.C. § 1361 ....................................................................................................... 12

28 U.S.C. § 2201-02 ................................................................................................. 12

28 U.S.C. § 2675(a) .................................................................................................. 14

29 U.S.C. §§1181(a), 1182 ....................................................................................... 19

42 U.S.C. §§ 300gg, 300gg-1 ................................................................................... 19

Pub L. No. 93-406, 88 Stat. 829 (1974) ................................................................... 19

Pub. L. No. 99-272, 100 Stat.82 (1985) ................................................................... 19

Pub. L. No. 104-191, 110 Stat. 1936 (1996) ............................................................ 19

Pub. L. No. 104-191, 110 Stat. 1979 (1996) ............................................................ 19

Pub. L. No. 104-204, 110 Stat. 2944 (1996) ............................................................ 19

Pub. L. No. 104-204, 110 Stat.2935 (1996) ............................................................. 19

Pub. L. No. 105-277, 112 Stat.2681 (1998) ............................................................. 19

Pub. L. No. 110-343, 122 Stat. 3765 (2008) ............................................................ 19

Pub. L. No. 111-148, 124 Stat. 119 (2010):

§ 1001 ................................................................................................. 4
§ 1201 ................................................................................................. 4
§ 1401-02 ........................................................................................... 4
§ 1421 ................................................................................................. 4
§ 1501 ................................................................................................. 4
§ 1501(a) ...................................................................................... 3, 25
§ 1501(a)(2)(A) ............................................................................ 3, 20
§ 1501(a)(2)(B) ............................................................................ 2, 18
§ 1501(a)(2)(E) .................................................................................. 3
§ 1501(a)(2)(F) ................................................................................ 20
§ 1501(a)(2)(G) ........................................................................... 3, 20
§ 1501(a)(2)(J) ................................................................................. 20
§ 1513 ................................................................................................. 4
§ 2001 ................................................................................................. 4
§ 10101(a) .......................................................................................... 4
§ 10106 .............................................................................................. 4
§ 10106(a) ................................................................................. *passim*

Pub. L. No. 111-152, 124 Stat. 1029 (2010) ........................................... 4, 5

***Legislative Materials:***

H.R. REP. NO. 111-443 (2010) ................................................................ 3

***Miscellaneous:***

Congressional Budget Office, *An Analysis of Health Insurance Premiums
    Under the Patient Protection and Affordable Care Act* (Nov.30, 2009) ......... 5

Congressional Budget Office, *Key Issues in Analyzing Major Health Insurance
    Proposals* (Dec. 2008) ................................................................. 2, 3

Congressional Budget Office, *The Long-Term Budget Outlook* (June 2009) .............. 2

Letter from Douglas W. Elmendorf, Director, Congressional Budget Office,
    to the Hon. Nancy Pelosi, Speaker, House of Representatives (Mar. 20, 2010) ..... 4, 5, 22

ix

## INTRODUCTION

Plaintiffs challenge recently enacted federal health care reform legislation and move to preliminarily enjoin enforcement of the statute. In so doing, plaintiffs seek to import a political dispute into a judicial setting and to lure this Court beyond the proper role of the Judiciary. The effort fails at the threshold, for plaintiffs do not satisfy the basic constitutional prerequisites to invoke federal jurisdiction. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."). Plaintiffs cannot demonstrate an injury in fact – the indispensable precondition for standing – much less make the more demanding showing of irreparable harm necessary to obtain preliminary injunctive relief. Moreover, signaling the political cast of this case, plaintiffs ask this Court to pass judgment on a quintessentially legislative function – voting for a bill – a sphere in which Members of Congress have well-established immunity.

Even if plaintiffs could surmount these and other jurisdictional barriers, their claims still would fail. All plaintiffs' claims rest on the premise that the Patient Protection and Affordable Care Act ("ACA"), in its entirety, exceeds Congress's authority under the U.S. Constitution. The comprehensive regulatory measures of the ACA, however, fall squarely within Congress's power under both the Commerce Clause and the General Welfare Clause. Indeed, in their motion for a preliminary injunction, plaintiffs implicitly acknowledge as much by specifically asking this Court to "overrule" the Supreme Court's Commerce Clause jurisprudence, beginning with *Wickard v. Filburn*, 317 U.S. 111, 127-28 (1942), a case the Court decided more than 65 years ago and has relied on many, many times since. This Court cannot disregard settled Supreme Court precedent.

Congress enacted the ACA to address the mounting costs imposed on the economy, the government, and the public as a result of the inability of millions of Americans to obtain affordable health insurance.  The Act regulates the vast interstate markets in health insurance and health care services; and it regulates economic decisions about how to pay for health care services – whether to pay in advance through insurance or to attempt to do so later out of pocket – decisions that, in the aggregate, substantially affect the interstate health care market.  The Act also contains numerous revenue provisions that are projected to yield net savings to the federal government of more than $100 billion over the next decade, and is therefore valid under longstanding General Welfare Clause precedent, even though Congress also had a regulatory purpose in enacting it.

For these reasons, this case should be dismissed and plaintiffs' motion for a preliminary injunction should be denied.

## STATEMENT OF THE CASE

## I.      STATUTORY BACKGROUND

In 2009, the United States spent more than 17% of its gross domestic product on health care.  Pub. L. No. 111-148, §§ 1501(a)(2)(B), 10106(a).  Notwithstanding these extraordinary expenditures, 45 million people – an estimated 15% of the population – went without health insurance for some portion of 2009, and, absent the new legislation, that number would have climbed to 54 million by 2019.  CONG. BUDGET OFFICE ("CBO"), 2008 KEY ISSUES IN ANALYZING MAJOR HEALTH INSURANCE PROPOSALS 11 (Dec. 2008) [hereinafter KEY ISSUES]; *see also* CBO, THE LONG-TERM BUDGET OUTLOOK 21-22 (June 2009).

The record before Congress documents the staggering costs that a broken health care system visits on individual Americans and the nation as a whole. The millions who have no health insurance coverage still receive some degree of medical care, but often cannot pay for it. The costs of that uncompensated care are shifted to the government, taxpayers, insurers, and the insured. But cost shifting is not the only harm imposed by the lack of insurance. Congress found that the "economy loses up to $207,000,000,000 a year because of the poorer health and shorter lifespan of the uninsured," Pub. L. No. 111-148, §§ 1501(a)(2)(E), 10106(a), and that medical expenses cause, at least in part, 62 percent of all personal bankruptcies, *id*. §§ 1501(a)(2)(G), 10106(a). All these costs, Congress determined, substantially affect interstate commerce. *Id*. §§ 1501(a), 10106(a).

In order to remedy this critical problem for the American economy, the Act comprehensively "regulates activity that is commercial and economic in nature: economic and financial decisions about how and when health care is paid for, and when health insurance is purchased." *Id*. §§ 1501(a)(2)(A), 10106(a). First, to address inflated fees and premiums in the individual and small-business insurance markets, Congress established health insurance Exchanges "as an organized and transparent marketplace for the purchase of health insurance where individuals and employees (phased-in over time) can shop and compare health insurance options." H.R. REP. NO. 111-443, pt. II, at 976 (2010) (quotation omitted).

Second, the Act builds on the existing system of employer-based health insurance, in which most individuals receive coverage as part of their employee compensation. *See* CBO, KEY ISSUES, at 4-5. It creates a system of tax incentives to encourage small businesses to

purchase health insurance for their employees, and imposes penalties on certain large businesses that do not provide adequate coverage to their employees. Pub. L. No. 111-148, §§ 1421, 1513.

Third, the Act subsidizes insurance coverage for a large portion of the uninsured population. It provides premium tax credits and reduced cost-sharing for individuals and families with income between 100 and 400 percent of the federal poverty line, *id*. §§ 1401-02, and expands eligibility for Medicaid to individuals with income below 133 percent of the federal poverty level beginning in 2014. *Id*. § 2001.

Fourth, the Act removes barriers to insurance coverage. It prohibits widespread insurance industry practices, like refusing to cover or charging more for individuals with pre-existing medical conditions, that increase premiums – or deny coverage entirely – to those in greatest need of health care. *Id*. § 1201.[1] Finally, beginning in 2014, the Act requires that all Americans, with specified exceptions, maintain a minimum level of health insurance coverage, or pay a penalty. Pub. L. No. 111-148, §§ 1501, 10106.[2]

The CBO projects that the reforms in the Act will reduce the number of uninsured Americans by approximately 32 million by 2019. Letter from Douglas W. Elmendorf, Director, CBO, to the Hon. Nancy Pelosi, Speaker, U.S. House of Representatives 9 (Mar. 20, 2010) [hereinafter CBO Letter]. It further projects that the Act's combination of reforms and tax credits will reduce the average premium paid by individuals and families in the individual and

---

[1] The Act also prevents insurers from rescinding coverage for any reason other than fraud or intentional misrepresentation of a material fact. Pub. L. No. 111-148, §§ 1001, 1201. And it prohibits caps on the amount of coverage available to a policyholder in a given year or over a lifetime. *Id*. §§ 1001, 10101(a).

[2] These provisions have been amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, § 1002, 124 Stat. 1029, 1032.

-4-

small-group markets.  *Id*. at 15; CBO, AN ANALYSIS OF HEALTH INSURANCE

PREMIUMS UNDER THE PATIENT PROTECTION AND AFFORDABLE CARE ACT 23-25

(Nov. 30, 2009).  And the CBO estimates that the interrelated revenue and spending provisions

in the Act will yield net savings to the federal government of more than $100 billion over the

next decade.  CBO Letter at 2.

## II.    CURRENT PROCEEDINGS

Shortly after the ACA was signed into law, plaintiff Anthony Shreeve sued defendants

Barack Obama, President of the United States; Harry Reid, Majority Leader of the Senate;

Nancy Pelosi, Speaker of the House of Representatives;[3] and the United States.  Plaintiff

amended his complaint on July 19, 2010, and again on July 27, 2010, to add thousands of

persons and entities as co-plaintiffs, but did not allege any additional facts or claims.

Plaintiffs' second amended complaint alleges that the ACA, in its entirety, violates the

Tenth Amendment because the Act regulates healthcare and the Constitution purportedly does

not empower Congress to regulate healthcare.  Second Am. Compl. ¶¶ 17-18, 26-27.  The

complaint further alleges that defendants Obama, Reid, and Pelosi abused their authority and

violated their oaths of office by supporting, voting for, and signing the ACA into law.  *Id*. ¶¶ 23-

25, 28-29.  Plaintiffs seek declaratory, injunctive, and monetary relief.

On July 19, 2010, more than three months after plaintiffs originally filed this action, they

moved for a preliminary injunction, seeking to enjoin enforcement of the ACA pending

---

[3] Defendants Obama, Reid, and Pelosi are sued only in their official capacities.

resolution of the case.  The sole basis for plaintiffs' request is their belief that the Supreme

Court's decision in *Wickard v. Filburn*, 317 U.S. 111 (1942), should be overturned.[4]

**ARGUMENT**

## I.    STANDARD OF REVIEW

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under

Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which

relief can be granted under Rule 12(b)(6).  Plaintiffs bear the burden to show jurisdiction under

Rule 12(b)(1), *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996), and the Court

must determine whether it has jurisdiction before addressing the merits, *see Steel Co.*, 523 U.S.

at 94-95.  Where, as here, the defendant challenges jurisdiction on the face of the complaint, the

complaint fails unless it has plead sufficient facts to establish that jurisdiction exists.  *See*

*Kardules*, 95 F.3d at 1335.  Under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949 (2009).

This brief also responds to plaintiffs' motion for a preliminary injunction.  A preliminary

injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 376

(2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

---

[4] Plaintiffs did not perfect service on defendants until August 12, 2010, when the United States Attorney's Office for the Eastern District of Tennessee was served.

-6-

the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Id*. at 374 (emphasis added).[5]

## II.     THIS CASE SHOULD BE DISMISSED BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION

### A.     Plaintiffs Lack Standing Because They Have Alleged No Injury In Fact

Federal courts sit to decide cases, not to referee policy debates.  Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quotation omitted).  Plaintiffs' challenge to the ACA does not satisfy the most basic prerequisite of a case or controversy under Article III, a claimant with standing to sue, because plaintiffs have alleged no injury.

To establish standing, "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation omitted).  The injury "must affect the plaintiff in a personal and individual way," and "may not be the product of speculation or conjecture." *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d 271, 276 (6th Cir. 2006).  "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation omitted).  Plaintiffs have not met these standards.

---

[5] *Winter* represents the Supreme Court's most recent articulation of the preliminary injunction standard.  The standard plaintiffs cite, *see* Pls.' Br. Supp. Mot. Prelim. Inj. 2, is not controlling, but even if it were, plaintiffs would fail that test.

The complaint repeatedly recites the legal conclusion that "[p]laintiffs have suffered direct and immediate violations of their several and individual Constitutional rights," Second Am. Compl. ¶¶ 25, 27, 29, but fails to support this legal conclusion with even a single, factual allegation describing the injury plaintiffs have purportedly suffered. This failure is fatal to plaintiffs' claims. To carry their burden of establishing standing, plaintiffs must "clearly and specifically set forth facts sufficient to satisfy th[e] Article III standing requirements." *Rosen v. Tenn. Com'r of Fin. and Admin.*, 288 F.3d 918, 927 (6th Cir. 2002); *see also White v. United States*, 601 F.3d 545, 551-52 (6th Cir. 2010) ("[S]tanding cannot be inferred . . . from averments in the pleadings, but rather must affirmatively appear in the record, nor will naked assertion[s] devoid of further factual enhancement suffice." (citations and quotations omitted)). "[A] mere allegation that a plaintiff is 'affected' by governmental action does not amount to an allegation of injury in fact. There are plenty of effects that do not rise to the level of legal harm; and a plaintiff must therefore tell us *what the effect is* in order to allege an injury in fact." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 618 (6th Cir. 2008); *see also Sierra Club v. Morton*, 405 U.S. 727, 735 n.8 (1972) (allegation that plaintiff's "interests would be vitally affected by the acts hereinafter described" did not confer standing absent an allegation as to how they were so affected). Because plaintiffs do not allege how, when, or even whether the ACA will adversely affect them, they have not sufficiently alleged an injury in fact.

Furthermore, contrary to plaintiffs' suggestion, a threadbare legal allegation of a violation of constitutional rights is not sufficient to establish an injury in fact. The Supreme Court recently reiterated the law as it has stood for more than 80 years:

> [Courts] have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. The question may be considered only when the

-8-

> justification for some direct injury suffered or threatened, presenting a justiciable
> issue, is made to rest upon such an act . . . . The party who invokes the power
> must be able to show not only that the statute is invalid but that he has sustained
> or is immediately in danger of sustaining some direct injury as the result of its
> enforcement, and not merely that he suffers in some indefinite way in common
> with people generally.

*Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007) (quoting

*Frothingham v. Mellon*, 262 U.S. 447, 488 (1923) (omission in original)). Plaintiffs do not even

allege that the Act will affect them personally, much less specify exactly how it will do so. Nor

do plaintiffs make any effort to differentiate themselves from the millions of others the Act will

affect. *In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (Injury "must cause individual, rather

than collective, harm."); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494-95 (6th Cir. 1999)

(concluding plaintiffs had not suffered an injury in fact where their injury was not distinct from

the injury shared by all Ohio taxpayers and public employees). Because plaintiffs have failed to

allege an injury in fact, the Court lacks jurisdiction over this case.

   **B.**     **Plaintiffs' Claims Against Defendants Reid And Pelosi Are Barred By The
            Speech Or Debate Clause**

        The Court lacks jurisdiction over plaintiffs' claims against defendants Reid and Pelosi for

the additional reason that the Speech or Debate Clause, or "legislative immunity," bars those

claims. The United States Constitution mandates that, "for any Speech or Debate in either

House, [Members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, §

6, cl. 1. This clause grants Members of Congress absolute immunity from suit for any civil

actions, whether for declaration, injunction, or damages, that "fall within the 'sphere of

legitimate legislative activity.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975).

Thus, "once it is determined that [an official is] acting within the 'legitimate legislative

-9-

sphere[,]' the Speech or Debate Clause is an absolute bar" to any suit against that official based on such activity.  *Id*. at 503.

All plaintiffs' claims against defendants Reid and Pelosi challenge activity that falls within the legitimate legislative sphere and thus within the compass of legislative immunity. Plaintiffs allege that, by "supporting" and "voting for" the ACA, defendants abused their authority, violated the Tenth Amendment, and breached their oaths of office.  Second Am. Compl. ¶ 23; *see also id*. ¶¶ 19-20 (alleging defendants Pelosi and Reid presided over passage of the ACA in their respective houses of Congress and voted for the legislation in their capacity as Members of Congress).  These actions fall squarely within the broad category of legislative activity protected by the Speech or Debate Clause.  *See Eastland*, 421 U.S. at 504 (Clause protects all activities "integral" to the "consideration and passage or rejection of proposed legislation"); *Gravel v. United States*, 408 U.S. 606, 617 (1972) (Speech or Debate immunity "equally cover[s]" "the act of voting" as it does actual speech or debate); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (Clause applies to "things generally done in a session of the House by one of its members in relation to the business before it," including "the act of voting").

That Plaintiffs claim defendants Reid and Pelosi have violated the Constitution is of no significance; such a claim does not evade the Speech or Debate bar, as legislative immunity is absolute.  *See Eastland,* 421 U.S. at 509-10 (applying absolute legislative immunity to Members of Congress with respect to First Amendment claim).  Accordingly, all plaintiffs' claims against defendants Reid and Pelosi are barred by legislative immunity.[6]

_____

[6] Plaintiffs claims against defendants Reid and Pelosi are also barred by sovereign immunity.  Although the Administrative Procedure Act waives sovereign immunity for purposes of plaintiffs' claims for injunctive and declaratory relief against the United States, *see* 5 U.S.C. §

### C. Plaintiffs' Claims Against Defendant Obama Are Barred By Presidential Immunity

The Court lacks jurisdiction over plaintiffs' claims against defendant Obama as well, because those claims are barred by presidential immunity. Plaintiffs allege that defendant Obama abused his authority, violated the Tenth Amendment, and breached his oath of office by "signing" the ACA "in his capacity as President of the United States." Second Am. Compl. ¶¶ 21, 23. This official act – signing a bill into law – falls squarely within the ambit of presidential immunity. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992); *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982) (holding President "is entitled to absolute immunity from damages liability predicated on his official acts"); *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866) (holding courts lack jurisdiction "to enjoin the President in the performance of his official duties").[7] All plaintiffs' claims against defendant Obama, therefore, should be dismissed.

---

702, the Act explicitly excludes Congress from the scope of its waiver, 5 U.S.C. § 701(b)(1)(A). *See Rockefeller v. Bingaman*, 234 F. App'x 852, 855-56 (10th Cir. May 17, 2007) (affirming dismissal of suit against Senator and Representative in their official capacities on sovereign immunity grounds); *Keener v. Cong. of the U.S.*, 467 F.2d 952, 953 (5th Cir. 1972) (affirming dismissal because Congress "is protected from suit by sovereign immunity"); *Burke v. Allard*, 2007 WL 2697598, at *3 (D. Colo. Sept. 11, 2007) (holding that sovereign immunity barred claim against United States Senator). Additionally, because sovereign immunity bars the Court from granting the relief plaintiffs seek against defendants Reid and Pelosi, plaintiffs also cannot satisfy the redressability prong of standing with respect to their claims against those defendants. *Cf. Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

[7] Because the Court cannot enjoin the President in the performance of his official duties, plaintiffs also cannot satisfy the redressability prong of standing with respect to their claims against defendant Obama. *See Franklin,* 505 U.S. at 803.

**D.      Plaintiffs' Request for Money Damages Is Barred by Sovereign Immunity**

Plaintiffs seek monetary, as well as declaratory and injunctive, relief.  The United States, however, has not waived its sovereign immunity with respect to plaintiffs' claim for money damages.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  A waiver of sovereign immunity cannot be implied, but must be "unequivocally expressed in the statutory text" and strictly construed in favor of the United States.  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (quotation omitted).  The only statutory waiver cited in the complaint, 28 U.S.C. § 1346, does not apply here.[8]

First, section 1346(a)(1) of Title 28, together with 26 U.S.C. § 7422(a), waives sovereign immunity "with respect to refund suits by taxpayers to recover internal revenue taxes alleged to have been erroneously or illegally assessed."  *Miller v. United States*, 784 F.2d 728, 729 (6th Cir. 1986).  This is not a suit for a tax refund.[9]

---

[8] The other statutory provisions cited by plaintiffs, *see* Second Am. Compl. ¶ 1 (citing 28 U.S.C. §§ 1331, 1361, 2201, 2202), do not waive sovereign immunity.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Reed v. Reno*, 146 F.3d 392, 397 (6th Cir. 1998); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996).

[9] The ACA's minimum coverage provision, which requires all Americans, with specified exceptions, to maintain a minimum level of health insurance coverage, or pay a penalty along with their income taxes does not take effect until 2014.  Neither do the assessments imposed on certain large businesses that do not provide adequate coverage to their employees.  Any attempt by plaintiffs to challenge these provisions at this time is therefore unripe and, in any event, barred by the Anti-Injunction Act.  *See* 26 U.S.C. § 7421(a) ("[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person[.]").

-12-

Second, section 1346(a)(2) – the Little Tucker Act – waives sovereign immunity for any claim against the United States "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*." 28 U.S.C. § 1346(a)(2) (emphasis added).[10] This provision does not waive sovereign immunity for plaintiffs' abuse of authority and breach of the oath of office claims because, if those claims are cognizable at all, they sound in tort. *See, e.g.*, *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002); *Nalette v. United States*, 72 Fed. Cl. 198, 202 (Fed. Cl. 2006). Nor does the provision waive sovereign immunity for plaintiffs' Tenth Amendment claim. The Little Tucker Act "does not create any substantive right enforceable against the United States for money damages." *Mitchell*, 463 U.S. at 216 (quotation omitted); *see also United States v. Testan*, 424 U.S. 392, 398 (1976). Instead, a substantive right must be found in some other source of law, such as the Constitution, a federal statute, or a regulation. *Mitchell*, 463 U.S. at 216-17. To effect a waiver of sovereign immunity under the Little Tucker Act, a plaintiff must "demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Id.* (quotations omitted); *see also Testan*, 424 U.S. at 398-99, 407. The Tenth Amendment does not mandate any such compensation, and thus, cannot form the basis for a waiver of sovereign immunity under section 1346(a)(2).[11]

_____

[10] District court jurisdiction under this provision is limited to claims not exceeding $10,000 in amount. 28 U.S.C. § 1346(a)(2).

[11] No substantive source of law mandates compensation by the Federal Government for damages sustained by an abuse of authority or breach of the oath of office either. Therefore,

-13-

Lastly, section 1346(b)(1) – the Federal Tort Claims Act ("FTCA") – waives the United States' sovereign immunity for claims for "money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 1346(b)(1).  Before bringing suit under the FTCA, a plaintiff must first file a claim with the appropriate federal agency, requesting a sum certain.  *See* 28 U.S.C. § 2675(a).  This requirement is jurisdictional and cannot be waived.  *McNeil v. United States*, 508 U.S. 106, 112-13 (1993); *Blakely v. United States*, 276 F.3d 853, 865 (6th Cir. 2002).  Here, plaintiffs nowhere allege that they have filed such a claim.  In sum, plaintiffs have not alleged a valid waiver of sovereign immunity with respect to their request for money damages, and therefore, they cannot seek such relief.

### E.     This Court Lacks Personal Jurisdiction Over Defendants Reid And Pelosi

Plaintiffs' claims against defendants Reid and Pelosi should be dismissed for the additional reason that this Court lacks personal jurisdiction over those defendants.  A federal court in Tennessee may only exercise personal jurisdiction over a non-resident defendant if that exercise of jurisdiction comports with the Due Process Clause.  *See Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (noting that Tennessee's long-arm statute is conterminous with the Due Process Clause's limits on personal jurisdiction).  The exercise of personal jurisdiction over a defendant is consistent with due process if: (1) the defendant purposefully avails himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arises from the defendant's activities there; and (3) the acts of the

---

even if these claims did not sound in tort, they could not form the basis for a waiver of sovereign immunity under the Little Tucker Act.

defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1090 (6th Cir. 1989). This standard is not met here. Defendants Reid and Pelosi have not acted – either directly or through a subordinate – in the state of Tennessee. And, even if they had, none of their actions in Tennessee led to the enactment of the health care legislation that plaintiffs challenge. Defendants Reid and Pelosi, therefore, are not subject to jurisdiction in Tennessee in this action.

## III. THIS CASE SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Even if this Court had subject matter jurisdiction, plaintiffs' challenge to the Act still would fail. "Respect for a coordinate branch of Government forbids striking down an Act of Congress except upon a clear showing of unconstitutionality." *Salazar v. Buono*, 130 S. Ct. 1803, 1820 (2010). Plaintiffs cannot make this showing.

All plaintiffs' claims rest on the premise that Congress exceeded its authority in enacting the ACA. *See* Second Am. Compl. ¶ 24 (enacting ACA "not within the scope of authority granted to the Defendants by . . . the Constitution); *id*. ¶ 26 (enacting ACA "violate[s] the explicit limitations placed upon Defendants' authority by the 10th Amendment");[12] *id*. ¶ 28 (enacting ACA "represent[s] a breach of Defendants . . . duties contained within their oaths of office to protect and defend the Constitution"). Plaintiffs do not challenge any particular

---

[12] The Supreme Court has explained that, "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992); *see also United States v. McGee*, 714 F.2d 607, 614 (6th Cir. 1983) ("Nothing in the [T]enth [A]mendment deprives the United States of powers specifically delegated to it in the Constitution.").

-15-

provision or provisions of the ACA; rather, they claim the Act is unconstitutional "in its entirety," Second Am. Compl. ¶ 18, because "[n]othing in the Constitution grants the Federal Government authority to regulate healthcare," *id*. ¶ 17. In their motion for a preliminary injunction, however, plaintiffs implicitly concede that the Act is within Congress's Commerce Clause power, as construed by the Supreme Court, by relying solely on the argument that *Wickard v. Filburn*, 317 U.S. 111 (1942), should be overruled. *See* Pls.' Br. Supp. Mot. Prelim. Inj. 3-8.

Under the controlling Supreme Court precedent, the comprehensive regulatory measures of the ACA are a proper exercise of Congress's power under both the Commerce Clause and the General Welfare Clause. Accordingly, plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted.

### A. This Court Cannot Overrule Supreme Court Precedent

The only argument on the merits in plaintiffs' motion for a preliminary injunction is that *Wickard* should be overruled. *See* Pls.' Br. Supp. Mot. Prelim. Inj. 3 ("Commerce Clause Precedent Must be Overturned"); *id*. ("Plaintiffs' primary argument is that *Wickard* granted powers to Congress that are unconstitutionally broad."); *id*. at 4 ("*Wickard* MUST be overturned."); *id*. at 8 ("*Wickard* must be overturned to restore our Constitutional Republic."). Plaintiffs do not argue in the alternative—*i.e.*, that, even under *Wickard* and its progeny, the ACA exceeds Congress's authority. Plaintiffs thus appear to concede that the ACA is a valid exercise of Congress's Commerce Clause power under applicable Supreme Court precedent. And, at least as the Federal Judiciary is currently organized, this Court cannot overrule that precedent. *See*, *e.g.*, *Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to

-16-

prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."); *United States v. Talley*, 275 F.3d 560, 565 (6th Cir. 2001) ("[T]he Supreme Court has recently reminded us that lower courts should not overrule its decisions . . . . Rather, we are to leave to the Court whether to overrule its prior decisions.") (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).[13]

### B. The ACA Is a Valid Exercise of Congress's Powers To Regulate Interstate Commerce

There is good reason why plaintiffs wish to abrogate the controlling precedent. It establishes that the ACA is a valid exercise of Congress's Commerce Clause power. The Constitution grants Congress the power to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3, and to "make all Laws which shall be necessary and proper" to the execution of that power, *id.* cl. 18. This grant of authority empowers Congress to "regulate activities that substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005). The question is not whether any one person's conduct, considered in isolation, substantially affects interstate commerce, but whether the class of activities, "taken in the aggregate," does so. *Id.*; *see Wickard*, 317 U.S. at 127-28.

In assessing Congressional judgments on this issue, the Court's task "is a modest one." *Raich*, 545 U.S. at 22. The Court need not itself measure the impact on interstate commerce of the activities Congress sought to regulate; instead, the Court need only determine "whether a

---

[13] The last time the Supreme Court had the opportunity to examine *Wickard*, it did not overrule or even limit its holding; instead, the Court explicitly relied on the reasoning of *Wickard* to uphold Congress's authority to prohibit the possession of home-grown marijuana intended solely for personal use. *See Gonzales v. Raich*, 545 U.S. 1 (2005).

'rational basis' exists" for Congress's conclusion that the activity affects interstate commerce. *Id*. Under rational basis review, this Court may not second-guess the factual record upon which Congress relied.[14]

*Raich* and *Wickard* illustrate the breadth of the Commerce power and the deference accorded Congress's judgments. In *Raich*, the Court sustained Congress's authority to prohibit the possession of home-grown marijuana intended solely for personal use. It was sufficient that the Controlled Substances Act "regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market." *Raich*, 545 U.S. at 26. Similarly, in *Wickard*, the Court upheld a penalty on wheat grown for home consumption despite the farmer's protests that he did not intend to put the commodity on the market. It was sufficient that the existence of home-grown wheat, in the aggregate, could "suppl[y] a need of the man who grew it which would otherwise be reflected by purchases in the open market," thus undermining the efficacy of the federal price stabilization scheme. *Wickard*, 317 U.S. at 128. In each case, the Court upheld obligations even on individuals who claimed not to participate in interstate commerce, because those obligations were components of broad schemes regulating interstate commerce.

Like the statutes at issue in *Raich* and *Wickard*, the ACA regulates a vast interstate market – the market in health insurance and health care services. Regulation of this market, which consumes more than an estimated 17% of the annual gross domestic product, is well within the compass of congressional authority under the Commerce Clause. Pub. L. No.

---

[14] This Court accordingly may consider that record in its review of this motion to dismiss. *See Raich*, 545 U.S. at 20-21; Fed. R. Evid. 201 advisory committee's note.

111-148, §§ 1501(a)(2)(B), 10106(a).  Indeed, contrary to plaintiffs' assertion, *see* Second Am.

Compl. ¶ 17, the Court has recognized Congress's power to regulate insurance for more than 65

years, *see United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 553 (1944), as well

as health care services, *see Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 743-44 (1976).

Congress has repeatedly exercised its power over this field, providing directly for

government-funded health insurance through the Medicare Act and, over a period of more than

35 years, enacting numerous statutes that regulate the content of policies offered by private

insurers.[15]  The ACA builds on these laws regulating health insurance and health care services.

The ACA, moreover, regulates economic decisions about how to pay for health care

services – whether to pay in advance through insurance or to attempt to do so later out of pocket

---

[15] In 1974, Congress enacted the Employee Retirement and Income Security Act, Pub L. No. 93-406, 88 Stat. 829 ("ERISA"), which establishes federal requirements for health insurance plans offered by private employers.  A decade later, Congress passed the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 ("COBRA"), which allows workers and their families who lose their health benefits under certain circumstances the right to continue receiving certain benefits from their group health plans for a time.  In 1996, Congress enacted the Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, 110 Stat. 1936 ("HIPAA"), to improve access to health insurance by, among other things, generally prohibiting group plans from discriminating against individual participants and beneficiaries based on health status, requiring insurers to offer coverage to small businesses, and limiting the pre-existing condition exclusion period for group plans.  26 U.S.C. §§ 9801-03; 29 U.S.C. §§ 1181(a), 1182; 42 U.S.C. §§ 300gg, 300gg-1.  HIPAA added similar requirements for individual insurance coverage to the Public Health Service Act.  Pub. L. No. 104-191, § 111, 110 Stat. 1979.  *See also* Mental Health Parity Act of 1996, Pub. L. No. 104-204, 110 Stat. 2944 (regulating annual or lifetime dollar limits on mental health benefits); Newborns' and Mothers' Health Protection Act of 1996, Pub. L. No. 104-204, 110 Stat. 2935 (requiring plans that offer maternity coverage to provide at least a 48-hour hospital stay following childbirth); Women's Health and Cancer Rights Act of 1998, Pub. L. No. 105-277, § 902, 112 Stat. 2681, 2681-436 (requiring certain plans to offer benefits related to mastectomies).  More recently, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, Pub. L. No. 110-343, § 512, 122 Stat. 3765, 3881 ("MHPAEA"), requiring parity in financial requirements and treatment limitations between mental health and substance use disorder benefits and medical and surgical benefits.  MHPAEA §§ 701-02.

– decisions that, "in the aggregate," without question substantially affect the vast, interstate health care market.  *Raich*, 545 U.S. at 22.  Congress expressly recognized that "decisions about how and when health care is paid for, and when health insurance is purchased" are "economic and financial" and therefore "commercial and economic in nature."  Pub. L. No. 111-148, §§ 1501(a)(2)(A), 10106(a).  Congress also explicitly found that individuals' decisions to try to pay for health care out of pocket at the time the services are rendered, rather than to pay in advance through insurance, result in $43 billion annually in uncompensated medical care for those who, it turns out, cannot pay out of pocket.  By any measure, this is a substantial effect on interstate commerce.  Among other things, these economic decisions shift costs to third parties, *id*. §§ 1501(a)(2)(F), 10106(a); "increase[] financial risks to households and medical providers," *id*. §§ 1501(a)(2)(A), 10106(a); raise insurance premiums, *id*. §§ 1501(a)(2)(F), 10106(a); precipitate personal bankruptcies, *id*. §§ 1501(a)(2)(G), 10106(a); and impose higher administrative expenses, *id*. §§ 1501(a)(2)(J), 10106(a).  It is clear that Congress may use its Commerce Clause authority to regulate these direct and aggregate effects.  *See Raich*, 545 U.S. at 16-17; *Wickard*, 317 U.S. at 127-28.  Accordingly, the Act falls within Congress's power under the Commerce Clause.

## C. The ACA Is a Valid Exercise of Congress's Independent Power under the General Welfare Clause

Plaintiffs' challenge to the ACA fails on the merits for an additional reason.  Independent of its Commerce Clause authority, Congress is vested with the "Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States[.]"  U.S. Const. art. I, § 8, cl. 1.  Congress's power to tax and spend under the General Welfare Clause has long been recognized as "extensive."  *License Tax Cases*,

72 U.S. (5 Wall.) 462, 471 (1867); *see also Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 581 (1937). The Court has long since adopted the view of Alexander Hamilton that Congress may use its power under this Clause even for purposes that would exceed its powers under the other provisions of Article I. *See United States v. Sanchez*, 340 U.S. 42, 44 (1950).

To be sure, Congress must use this power to "provide for the . . . general Welfare." U.S. Const. art. I, § 8, cl. 1. But, as the Supreme Court held 75 years ago with regard to the Social Security Act, such decisions about how best to provide for the general welfare are for the representative branches, not for the courts. *Helvering v. Davis*, 301 U.S. 619, 640 (1937); *id*. at 645 & n.10; *see also South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

The ACA falls within Congress's "extensive" General Welfare authority, *License Tax Cases*, 72 U.S. at 471, because it is composed of interrelated revenue and spending provisions designed to expand insurance coverage. Congress, among other things, enacted tax credits for eligible small employers to help them provide health insurance for their employees as well as assessments for certain large employers that do not offer adequate insurance; provided tax credits for eligible individuals to purchase insurance in the health insurance Exchanges; broadened eligibility for Medicaid and authorized significant federal expenditures to cover the increased costs of that expansion; imposed tax assessments on pharmaceutical and medical device manufacturers, as well as insurance companies, to help finance the additional coverage; and required individuals not otherwise exempt to obtain minimum essential coverage or pay a penalty when filing their income tax returns.

That some of the Act's revenue provisions have a regulatory purpose does not place the ACA beyond Congress's taxing power. *Sanchez*, 340 U.S. at 44 ("It is beyond serious question

that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed."); *cf. Bob Jones Univ. v. Simon*, 416 U.S. 725, 741 n.12 (1974) (noting that the Court has "abandoned" older "distinctions between regulatory and revenue-raising taxes").  So long as a statute is "productive of some revenue," the courts will not second-guess Congress's exercise of its General Welfare Clause powers, and "will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution."  *Sonzinsky v. United States*, 300 U.S. 506, 514 (1937).

The ACA easily meets this standard.  The CBO estimates that the interrelated revenue and spending provisions in the Act will yield revenue for the federal government of more than $400 billion and net savings of more than $100 billion over the next decade.  CBO Letter at 2, 6.  Thus, the ACA produces some revenue alongside its regulatory purpose, which is all that Article I, Section 8, Clause 1 requires.[16]

## IV.    Plaintiffs Are Not Entitled To a Preliminary Injunction

Even if plaintiffs had any valid claims, they still would not be entitled to a preliminary injunction.  Plaintiffs do not even attempt to satisfy the basic prerequisites for a preliminary injunction – that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.  *Winter*, 129 S. Ct. at 374.

---

[16] Any provisions of the ACA that do not fall within Congress's power under the Commerce Clause or the General Welfare Clause are nonetheless constitutional under the Necessary and Proper Clause, as reasonable means of accomplishing Congress's goal of ensuring all Americans access to affordable health insurance coverage.  *See Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276 (1981).

**A.      Plaintiffs Make No Showing That They Would Be Irreparably Harmed in the Absence of Emergency Relief**

Plaintiffs fail to show that they will ever suffer harm as a result of the ACA – let alone irreparable harm that will occur before the Court issues a decision on the merits.  Indeed, plaintiffs do not even try to demonstrate the existence of any harm, asserting instead that, "in cases of alleged Constitutional violations[,] the four-part test normally applied to preliminary injunctions logically reduces itself to one factor, and the likelihood of success on the merits factor is determinative."  Pls.' Br. Supp. Mot. Prelim. Inj. 2.  Plaintiffs misstate the law; a plaintiff cannot bypass the required showing of irreparable harm simply by advancing a constitutional claim.  The Supreme Court has held unequivocally that a party who asks a court to declare a statute unconstitutional "must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement."  *Hein*, 551 U.S. at 599.[17]

In any event, plaintiffs could not establish irreparable harm even if they tried.  As shown above, plaintiffs cannot demonstrate the injury necessary to establish standing, much less the irreparable harm required for a preliminary injunction.  *See In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008), *cert. denied*, 129 S. Ct. 1918 (2009) (noting that standing is a prerequisite for a cognizable allegation of irreparable harm); *Caribbean Marine Servs. Co. v.*

---

[17] The cases plaintiffs cite do not relieve them of this burden.  In *Connection Distributing Co. v. Reno*, 154 F.3d 281, 296 (6th Cir. 1998), the court denied preliminary injunctive relief because "[plaintiff] has not demonstrated that it will be irreparably injured absent the granting of an injunction."  The other cases plaintiffs cite merely find to be irreparable some actual and imminent injuries premised on violations of the First Amendment; they do not deem a showing of injury unnecessary.  *See Elrod v. Burns*, 427 U.S. 347, 374 (1976) ("injury was . . . occurring at the time of respondents' motion"); *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078-79 (6th Cir. 1994).

*Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (explaining that the minimum injury necessary to demonstrate standing does not suffice to establish irreparable harm). Furthermore, plaintiffs' languor in filing their motion for a preliminary injunction – waiting more than three months after the date on which they filed their original complaint and almost four months after the ACA was signed into law – belies any assertion that they will be irreparably harmed unless the Court enjoins enforcement of the Act.

### B. The Balance of the Equities and the Public Interest Weigh Strongly Against Granting Preliminary Relief

Plaintiffs, moreover, cannot establish that either the balance of equities or the public interest weighs in their favor. Indeed, in their motion for a preliminary injunction, they do not even attempt such a showing. The Supreme Court has cautioned that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "In cases involving the public interest as defined or protected by an Act of Congress, courts have long held that equitable discretion 'must be exercised in light of the large objectives of the Act. For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases.'" *United States v. Miami Univ.*, 294 F.3d 797, 818-19 (6th Cir. 2002) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 331 (1944)). Indeed, "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (internal quotation omitted).

When it enacted the ACA, Congress determined that the Act would reduce the costs

-24-

attributable to the poorer health and shorter life spans of the uninsured, lower health insurance premiums, improve financial security for families, and decrease the administrative costs of health care. Pub. L. No. 111-148, §§ 1501(a), 10106(a). As millions of Americans struggle without health insurance, as medical expenses force them into personal bankruptcy, as the spiraling cost of health care encumbers the entire economy, it is not for plaintiffs to second-guess these legislative judgments as to what the public interest requires.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss should be granted, and plaintiffs' motion for a preliminary injunction should be denied.

Dated: August 27, 2010          Respectfully submitted,

TONY WEST
Assistant Attorney General
IAN HEATH GERSHENGORN
Deputy Assistant Attorney General
GREGG L. SULLIVAN
United States Attorney
JENNIFER RICKETTS RIVERA
Director
SHEILA LIEBER
Deputy Director
 /s/ Michelle R. Bennett
MICHELLE R. BENNETT (CO Bar #37050)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave.
Washington, D.C. 20001
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2010, a true and correct copy of Defendants'

Memorandum in Support of Defendants' Motion to Dismiss and in Opposition to Plaintiffs'

Motion for Preliminary Injunction was served, by electronic case filing, upon the following:


     Van R Irion
     Law Office of Van R. Irion, PLLC
     9040 Executive Park Drive, Suite 223
     Knoxville, TN 37923


                                  /s/ Michelle Bennett
                                 MICHELLE R. BENNETT